Please all rise and be seated. Period, period, period. This Honorable Appellate Court of the Second Judicial District is now back in session to pursue into adjournment. The Honorable Mary Elizabeth Johnson is next. Good morning, gentlemen. Please be seated. Your Honor, this case on the docket. Student Badger 16 at 0409 NUI Construction Group, linked to the appellant, the Louis J. Vaessen and his capacity as trustee of the Louis H.Vaessen J. Vaessen Trust in the Berlin Tower, LLC, et al. Defendant Appellate. Arguing on behalf of the Defendant Appellate, Mr. J. S. Brenner. Arguing on behalf of the Defendant Appellate, Vaessen. Mr. Ron R. Van Asselt. Arguing on behalf of the Defendant Appellate in the Berlin Tower, Mr. James Ewing. Mr. Brenner. Thank you, Justices. Just for the record to correct, it's Daniel S. Brenner. My brother David is an attorney in Philadelphia. Thank you for your time this morning. May it please the Court and Counsel. It is ADY's contention in this matter that the trial could have committed a reversible error by granting a summary judgment motion and a 2619 motion in a mechanics link case, finding that the 300-foot post-tension concrete tower for a wind energy system that AUI constructed with an 11-foot foundation was a non-lienable trade fixture under the Mechanics' Lien Act. This morning I'd like to summarize the key points as to why we believe that was a reversible error. In time permitting, address some new arguments that were raised in the briefs by Klipper about why the Mechanics' Lien does not apply, and to address some old arguments that GSG, the developer, in essence, raised before the trial court, but did not prevail on those points. So why was it errored that this structure was found to be a non-lienable trade fixture? In essence, what the trial court did is consider the three factors laid out in the crane erector's case, but then essentially elevated one factor, namely title retention provisions and a recorded easement agreement between the owners of the land and the developer to which AUI was not a party, and found that those provisions overwhelmed the other provisions as to intent of the parties as to whether or not this was an improvement to real property. In doing so, essentially what the court allowed was the owner and developer, by agreement between them, to which AUI and other contractors were not privy, to contract around the only Mechanics' Lien Act, which should not be permitted. You said 932. I thought the document was recorded. The document was recorded on December 22, 2011. When did you start work? Early November of 2011. And how much work did you accomplish in that period of time, so far as money is concerned? I do not have the exact dollar value of that, but it was three months out of an approximate... My point is, are you asking for 20% of the total bill, or are you asking for the total bill which would have covered work post the recorded document? We're asking for all of the money. We do not believe that the recording of that document should bind AUI, and I'll get into that as I march through the factors. First factor under crane erectors is the manner in which the item is affixed to the realty. As I mentioned, this is a total of 500 feet with the wind turbine attached. AUI constructed the tower portion, which was 300 feet. It's connected by electrical lines to the power grid, and there's a foundation that's 4,000 square feet that goes between 11 and 12 feet below ground. It's important to note that courts have recognized that in considering the manner of attachment, there are a number of things or pieces of evidence that are relevant. One is, how would you remove it? There's evidence in the record from the affidavit of Mr. Carboni that this would require demolition, essentially blowing this structure up. So the fact that it is theoretically movable has little significance. In the Darlington Lumber case, there were two categories of improvements. One found to be trade fixtures, and one found to be a liable fixture, and that was a dam. In that case, the court noted that the practical value of the ability to remove the materials that made the dam was useless because they'd have to be destroyed. Essentially, you'd take them to a dump and get rid of them. So too here. On this, AUI believes the trial court got it right. In the written opinion issued on April 15, 2015, the trial court noted that this form of attachment suggests permanent attachment to the premises. So factor two, whether the work is adapted to and necessary for the purpose for which the premises is devoted. Now, AUI does not dispute that this started as farmland. This development was to take a piece of that farmland and create a different use, namely a wind energy generation system. Are you going to buy the parcel that is identified in the close proximity to the tower? Is that what you're seeking? Or do you want to sell the entire farm? We believe the lien attaches to the entire tract of land, which is the farm. Apparently, the property is being assessed by an assessor that creates a personal property number and a permanent parcel that covers roughly the base of the wind turbine. You're talking about the taxation of the turbine on the code? Yes. And you don't want to tell just that base. You want to sell the entire farm. We believe the lien attaches to the entire parcel, yes. Okay. The trial court acknowledged on this second factor that it's clear that the wind tower was specific to necessarily to produce energy from a wind farm. So we believe on factor number two that we did favor finding that this was a lienable fixture. On factor three, again from the crane erector's case and other cases, whether the parties intended that the item become part of the realty and permanently prove the real estate. It's important to note that this factor does not stand alone from the previous two. The appellate courts have noted that the previous two factors are in part evidence of intent. An agreement that's relevant to the item in question, also relevant, but it does not exclude the previous factors, both of which the court found weighed in favor of this being a lienable fixture. What the court did is essentially say if two part upstream parties, without the knowledge of a downstream subcontractor, create a title retention provision, regardless of the previous two factors, that will carry the day and determine whether or not the work done by that downstream subcontractor is lienable. And we believe that was... Well, that isn't quite exactly what you found, is it? That was your point. Because you're asking for everything, including the amount of money that you spent, post a reclamation of the document. So you're basically saying it's a null ob initio situation because you started the work before the recorded document was filed, as opposed to the alternative argument, which is you're only entitled to lien it until you find out and you have the opportunity to walk away, and you didn't walk away, so why shouldn't you be a stop for making this argument now? You discussed all the property to the extent of your lien prior to notice. The only notice that's of record is arguably constructive notice because it was filed with the recorder's office. There is no evidence in the record that there was actual notice of that document. This was an argument that was advanced by the appellees, and there was no evidence put in that we received actual notice. If we had received actual notice, perhaps your question, Justice McClaren, would be more relevant. We do not believe it is. We started work before this document was recorded, and we believe we're entitled to the full value of the lien, or at least the opportunity to present evidence on that at trial. So that was going to be one of my questions to you. Your basis for appeal more so at this point is the manner in which this case was dismissed. Twofold. One, we believe that there is sufficient evidence in the record that this court should reverse and find that it was a lienable improvement. That doesn't entitle us to foreclose on the lien. The second part, your Honor correctly notes, is we believe the manner in which the trial court articulated its reasoning in the order demonstrates that the inferences and the manner in which the court considers the movement versus the non-movement on these types of motions was not adhered to. For example, on the easement, there was a memorandum of easement that was recorded on December 22nd. In the trial court's order, after talking about how AUI arguably could have asserted a UCC lien, at the conclusion of that discussion, the court itself said, and I quote, possibly filing a mechanics lien and UCC lien may be appropriate. So even the trial court recognized that had AUI been on notice, the document itself doesn't make it clear that you cannot file a mechanics lien. We filed a mechanics lien. If the document is not clear, then the inference should have been drawn in favor of AUI and denying its positive motions. So it's a question of fact and not one of law? On the notice issue, absolutely. On the UCC lien issue, since I touched on it, I'll try to deal with this quickly. I believe that the issue of whether or not AUI could or could not have asserted a UCC lien, there was nothing in the record that would support the trial court's observations on that. As we pointed out, we had a contract with an entity called Pistenza, and Pistenza had an agreement with Clipper. There's no indication that Pistenza either had anything that would allow us or allow them to grant us a security interest in this. We think that demonstrates, again, that inferences were drawn against the non-movement. If I could ask a question or two. Sure. Let's assume that these were high-tension power line structures that ComEd or some public utility placed upon properties based upon an easement, and your company built those towers, and then for some reason the public utility went bankrupt or refused to pay. Would it be your position that you would also have a right to sell the farm or the property that's underneath the easements that the high-power tension line structures are on? If there was a benefit to the owner of that farmland, so, for example, in this case, Your Honor, there was a fee that was paid, a royalty fee that was paid. It's a fixed fee subject to an escalator of $7,500 per wind turbine, so there was some benefit. If, in your hypothetical, the landowner was getting some benefit, financial benefit, that would prove the value of the property, I would argue that any cash stream generated by those lines that would accrue to the landowner would be a benefit. I would say yes on that. Are you saying that the consideration paid for the easement, if, in fact, it was created with the agreement or the initial grant of the easement and consideration was paid, that, therefore, there was a benefit to the underlying property and, therefore, it's liable? Yes. But if it wasn't, let's say, its third or fourth generation owner of the underlying farm, would they still get a benefit or has the benefit now become essentially what most easements are and there is an encumbrance on the land? If I understand your hypothetical, second or third generation take over the farm, if there is still a payment due to the landowner, regardless of who then owns the land, I would say that there is a benefit to the land. As a matter of fact, this easement articulates that it will be binding upon successors and assigns of the owner and runs with the property. So it does provide a benefit to the property. One other item related to that is that the trial court also sort of speculated, in my opinion, that it could be a liability. I'll quickly address that because I think any improvement, assuming it's an improvement, could generate liability as well as benefit, and I don't think that should have been a factor that was considered by the trial court. So essentially what the error was is that the trial court used a document that was recorded after AUI started work, of which there's no evidence AUI had notice, to allow upstream parties to contract around the Mechanics' Lien Act and deprive a downstream subcontractor of Mechanics' Lien rights. And the manner in which the court decided this case demonstrates that inferences that should have been drawn in favor of the non-moving party, AUI, were not. If I could briefly address the Clippers' new arguments related to the Mechanics' Lien in their briefing before this court, essentially Clippers argues that AUI had no contract with the Bassins and they were the owner. Look at AUI's contract with Postenza. They used defined terms that are at odds with what AUI alleges in this matter. In their briefs, though, don't they also say that regardless of whether or not they contracted away the right to a Mechanics' Lien, you would not have been able to have it anyway? I believe that's what they're arguing here because we didn't have a contract with the owner. Regardless of the fact that you didn't have a contract with the owner. Are you saying even if there wasn't a contract that gave away the right to lien, that you still would not have been able to get a lien? And you're saying, yeah, because we weren't privy to contract with the owner? I believe they're saying that, but what they're saying is because we didn't have an agreement with the owner, we don't have a Mechanics' Lien right. And that turns the Mechanics' Lien Act on its head. By that logic, subcontractors and second-tier subcontractors would have no lien rights. The issue is there was a chain of contracting between GSG, who was the developer, that the owners knowingly permitted to enter into that contract by virtue of the easement agreement. That creates the first line and anyone downstream from there, contractor, subcontractor, second-tier subcontractor, is protected by the Mechanics' Lien Act. So the issue really is and should be focused on whether or not this is a lienable improvement or whether or not it's a trade fixture. Likewise, other arguments they raise about whether or not a Section 5 sworn statement was required or provided, again, that has no bearing on our lien rights. That is something that GSG and Clipper should have taken care of between them. That doesn't bar AUI if upstream parties don't comply with their obligations under the Act. Finally, GSG ambassadors raise some arguments with respect to timeliness of lien. It really emanates from the same source. In the arbitrator's award, which was attached to the complaint, in the reasoned award, the arbitrator stated that AUI completed work by March 2012. In fact, that argument or that point was not in contention in the arbitration. Collateral estoppel and judicial estoppel were the arguments raised at the trial court. Raised again, we believe that the trial court got that right. If the date of work completed is, in fact, May 12, 2012, as alleged in the lien claim, all of the timeliness arguments fall to the wayside. Thank you for your time. I'll move on. Thank you. Okay, great. Thank you so much, sir. Mr. Van Osdale? Good morning, sir. Good morning. May it please the Court? Yes. Counsel, there are two main issues before the Court today. The first is whether AUI's services provide with the ability to have a mechanics lien attached to the Boston's farm, and the second is, if so, whether AUI complied with the requirements of the Mechanics Lien Act. With respect to the first issue, there are two main considerations. The first is whether the wind energy system at issue is, in fact, a trade fixture. If the Court reaches the conclusion that it is, in fact, a trade fixture, then the analysis is over because, under Illinois law, a mechanics lien cannot attach to a trade fixture. In the event the Court reaches the conclusion that it is not a trade fixture, the Court must look to who received the benefit of the wind energy system. If the Court finds that the only party to receive the benefit of the wind energy system was GSG, then the only lien that AUI could have asserted would have been against GSG's lesser property interest. However, AUI failed to raise this argument at the trial court level on both the summary judgment motion and the motion to dismiss. Therefore, this argument is waived. As counsel noted, they're only attempting to attach their lien to the Boston's entire farm. Even if the Court concludes that it is not a trade fixture, that it can attach to GSG's interest, and that AUI did not waive it, the Court must then analyze whether AUI complied with the requirements of the Mechanics Lien Act. AUI failed to comply with two main requirements of the Mechanics Lien Act, which are reporting its lien claim within four months and filing suit within two years of the last date of work. Accordingly, for all of these reasons, this Court should affirm the trial court's ruling. Turning to the first issue, well, the ruling, did the ruling make it a factual determination that it was outside the two-year time period? No, it did not, Your Honor. Well, then how can we do that? This Court can affirm the ruling of the trial court for any reason that's found in the record. Just because the trial court found against us on that issue doesn't mean that this Court can't consider that issue as well. Okay. What is the manifest weight that would suggest that we should come up with a different conclusion factually? The evidence regarding the Mechanics Lien Act? Two-year limitation. There was an arbitration that AUI pursued against Costenza prior to this case. There was an evidentiary hearing in that matter and a reasoned ruling that was entered. In that reasoned ruling, the arbitrator specifically found that the last day of performance on the contract was the last day of March 2012, March 31st. AUI failed to record its lien claim within four months of that date. It didn't record it until August of 2012. Okay. What are you talking about? Are you talking about stop by judgment, collateral estoppel, res judicata? What are you talking about? I'm talking about both collateral estoppel and judicial estoppel with respect to the last day of performance. For judicial estoppel to apply, there has to be five factors. There has to have been two positions taken and separate proceedings that are inconsistent, which the movement intended for the Court to rely on, and it did receive a benefit. In this case, all five of those factors are present because not only did AUI receive the arbitration award, it also petitioned the Circuit Court of Cook County to confirm that award. In that matter, AUI attached the arbitration award, which provided that the last day of work was March 2012. That court relied on the arbitration award and then it entered a judgment in favor of AUI. In this case, AUI takes an inconsistent position and alleges that its last day of performance was not until May, and it intends for this court to rely on that allegation and find that it has a longer period of time to comply with the Mechanics Lien Act. Accordingly, all five elements are present in that it has taken two inconsistent positions and separate proceedings and intended for the Court to rely on them, and it received a benefit from the previous proceeding, which is the judgment. Turning back to the trade fixture issue, there's three factors for the Court to consider. As counsel advised, the first one is how the property is annexed to the real estate. The second one is the nature and use of the property, and the third one is the party's intent. Is this property permanently or temporarily fixed to the property? Well, the manner that the property is attached is through a large concrete foundation. It's not permanent because it's required to be destroyed at the end of the easement period. Doesn't the agreement also agree that they can be removed and taken someplace else, or could I just understand that the turbines could be transported off the property? What the agreement requires is for GSG to remove the wind system entirely from the Bossons' property, because the Bossons are farmers. They have no intention for this giant piece of machinery. But I thought it also gave them the right to do that within a period of notice. Oh, correct. GSG has the ability to terminate the easement agreement at any time on three months' notice. However, it has the obligation to also remove the entire piece of machinery from the property within 180 days of the termination down to four feet below grade level, and then the four feet has to be covered with soil so that it can be used as farmland again. And that gets to one of the core issues in this case, which is, who received the benefit of this wind energy system that was put on the property? This wind energy system solely inured to the benefit of GSG. Bossons made it very clear in the agreement that once GSG's easement was terminated, the wind energy system had to be removed entirely. But your opponent submits that if they're receiving payment, then they are benefiting. AUS Council errs in that aspect because the benefit that's described under the Mechanics Wind Act is an improvement to the fee, not the receipt of payment for the lease or the easement that's at issue. In all of the cases cited, in Crater Rectors, in Darlington Lumber, in Airtight, there is a lease agreement between the tenant and the owner. The benefit is not whether that tenant pays a lease payment to the owner. It's whether the owner's fee receives a permanent improvement. In Crater Rectors, there was the beams and the overhead rails that were installed. They stayed with the building after the tenancy ended. In Airtight, there was the structural support for the flooring and the steel support of the floors. All of these things stayed with the building. In California Steel, that was the electrical system. Is there a difference between a lease and an easement then, that upon the expiration or termination of the lease, that the improvements on the property remain with the owner? It doesn't matter. What matters are the terms of the agreement. As counsel pointed out, it's not what the agreement is called. It's how the agreement is performed. And in this agreement, it requires GSG to remove it. In the other cases, the improvement continues to benefit the fee of the owner even after the termination of the lease agreement. The electrical system stays on the walls. The flooring stays with the building. And the above support for the cranes stays with that building as well. It improves the value of that property for the fee even after the tenancy agreement is terminated. In this case, the Bossons do not receive that benefit, and they in fact contracted because they did not want that property to remain there. Everything in the agreement between the Bossons and GSG… Are you saying that they didn't want this wonderful improvement on their property? You describe it as wonderful, but it wasn't wonderful to the Bossons. The only thing that the Bossons received was the monetary benefit, if it had been completed, was $7,500 per year. They did not put their entire farm at risk for the minimal payment of $7,500 per year, and this was not what they wanted to use their farm for. They gave GSG an easement to put this large piece of personal property on their farm and create ingress and egress roads to and from that piece of personal property. That's why it was an easement. They could use their property to put this on it, and once the easement was terminated, it had to be removed. The Bossons had no intent of ever using this wind energy system, and that's the only conclusion that can be read from the wind energy agreement at issue in this case. Did your client have the right to actually sign off on the ability to leave the property without contacting or advising subcontractors that it was hiring? That's why this isn't a no-lien contract as it's described by counsel. It's a no-lien situation because of what's being built here. It's not as though the landowner was allowing a tenant to build a large building on its property but didn't want that building to be liened. What it was allowing the easement holder to do was place a piece of personal property there that would only inert to its benefit. It's not a no-lien contract that prevents contractors from being able to attach a lien to the property. It's a no-lien situation because of the nature of the property as well as the nature of the relationship between the owner and the easement holder. That's why the intent of the parties is so important, and that's what all of the case law holds. Cray directors found the parties' intent to be the preeminent factor. Griffiths found that to be the most important factor. In Safari Circuits, it went as far as to hold the intent of the parties as the real heart of the matter. Both Cray directors and Safari Circuits said that the other factors are merely indicia of what the parties' real intent was. In this case, there's no genuine issue of material fact for what the parties' intent was. This property was going to be placed on the easement, and at the conclusion of the easement, it had to be removed. There was no permanent improvement to the boss's fee, and therefore, no lien should attach. The other arguments that I raised were with respect to compliance with the Mechanics' Lien Act, and those are outlined in the brief, but my time is up because it's split with Clippers' Counsel, so the last five minutes of the at-once brief will be given to Clippers' Counsel. Thank you. Thank you, Mr. Van Hassen. Mr. Morgan. Good morning, Ma'am. Please support. My name is Jim Morgan. I represent Clipper Wind Power Counsel. Your Honor, a lot of our arguments overlap the issue of whether it's a trade fixture or fixture and benefit to the land. I will like to address an issue first raised in the reply brief, and that of indemnification. For the first time, the plaintiff tries to make an issue out of the fact that there's an indemnification provision in the wind easement agreement between the Bossons and GSG 7 developer. Does that really matter? Pardon? Does the fact that there exists this indemnification possibility, does that really matter here? No, and that's my argument, Your Honor. It's entirely irrelevant. It has no bearing at all on whether the wind energy system is a fixture or a trade fixture. Second, it has no bearing on the fact that the plaintiff still seeks to hold the Bossons responsible. It's trying to go through the back door when they can't get through the front door. Third, Your Honor, it's simply inequitable, and the Mechanics' Lien Act was based on an idea of equity. Plaintiffs are saying that it's equitable that they get paid from somebody, in this case the fee owner, and don't worry, the fee owner is indemnified. But we're talking about a unique piece of property here. Property is recognized in all law as being unique. That's why you can get specific performance. What kind of indemnity can you give for a family farm? Your Honor, the equities go to the Bossons, not AUI. There was a business loss of $3 million. The Bossons receive $7,500 a year, and AUI believes that it's equitable because the Bossons may or may not be able to be indemnified by GSG 7. That's the final point, Your Honor. Simply because you have a right of indemnification doesn't mean that right will be fulfilled. Number one, it doesn't mean that GSG 7 will comply with their obligation to indemnify. Number two, it doesn't mean that they have the ability to indemnify for the loss of this unique property. For these reasons, we believe that the indemnification argument is irrelevant. Finally, what Mr. Van Ronstel was talking about with respect to the benefit to the fee, and here he's been clear that there was no benefit to the fee. The improvement was to GSG 7 for the period of the easement, and this structure will come down. There is no big structure exception to the trade fixture or fixture argument. Simply because it's large doesn't mean that it can't come down. In fact, one of the cases talks about using a bomb to remove shell casings. If it takes a bomb and it can still be a trade fixture, Your Honor, this can be a trade fixture. What benefit is there? In some cases, in the cases cited by Mr. Van Ronstel, there were residual benefits of the crane to the building. Here, having an 11-foot slab four feet beneath the ground provides zero benefit to the fee. It's not a dam, an artificial lake that's created that the owner can benefit from, as in other cases. There's simply no benefit to the fee here, and because of that, it is a trade fixture and not a fixture to the property. What's the – is there a life expectancy for a wind turbine? Wind turbines are – so the turbine itself is an engine, is a generator. It converts wind power to electric power. Yes, Your Honor, it's a mechanical device. There is a life expectancy to them. With proper maintenance, it's – with proper maintenance would include replacing parts. Perhaps it can go on for a very long time, but I don't know – I don't know technically what the replacement life – what the life is of a wind turbine. If this was to be removed, do they use a helicopter to remove the turbine off of the tower and then below the tower? Your Honor, my understanding is that a crane is used to remove the turbine, and then this is a special tower. This was a – How'd they get it up there? Pardon? How'd they get it up there? They got it up through KR Wind, who used a crane, as I recall, to install the turbine. Is that what the access roads are for? Yes, the access roads are for, I guess, maintenance for all aspects of it. It's a system that requires ingress and egress for maintenance, upkeep, those sort of things. Your Honor, we've raised other arguments in the last several weeks. Thank you, Mr. Brennan. Thank you, sir. Someone be sure to call Judge McClaren when this comes down so he can witness. I'm going to see what we can do. Thank you. Mr. Brennan, go ahead, sir. Just a couple of points in rebuttal. One, on the issue of that this is simply a large structure, and we're making a big deal of that, and that changes the whole analysis. Remember the first factor, how is this attached to the realty? The fact that this weighs over 2 million pounds and has an 11-foot foundation, in this case, the size of the structure does matter to the first factor. That's one. Two, both counsel for LEs talked about intent of the parties. In many of the cases, admittedly, the intent of the parties is before the court because the parties to that agreement are the ones with the fight, as opposed to here where AUI is stranger to that agreement is saying that it should not be bound by select provisions in that agreement, which is ambiguous at best about whether or not this is personal property or not. And by the way, the term trade fixture appears nowhere in that wind easement agreement. Thirdly, the indemnity issue. The reason that issue is important is while it wasn't raised for the first time in the reply brief, as counsel suggested, in their response brief there's much discussion about the misfortune that would be visited upon the farmers for this. I would submit that there's plenty of misfortune to go around in this case, and that's why we're here. The fact is that wisely and prudently they got an indemnity from the parties that they authorized to come to work. So to the extent that there is a theme being struck by that, I believe it is important that the court understand that that indemnity is present. I guess I would end with just the following, that upholding this decision in the manner in which the court decided, we believe provides a roadmap for developers and managers of any kind to wriggle around the mechanics of the act. This is a 300-foot tower with a wind turbine on top. That's roughly equivalent, at least the tower, to a 30-story building. Let's make it even lower. Let's say it's a 10-story office building slab on grade, and they do it pursuant to an easement, and say, get rid of it in 30 years, which is a typical length of a long-term ground lease. If that's the case here, that it can be a non-lienable trade fixture, so too there. We would submit that the trial court got it wrong. We would ask that you find that it was a lienable fixture, and the alternative that the issues on notice were not properly decided in accordance with the standards applicable to 2619 and 2-1005 and send it back to the trial court for further proceedings. Thank you. Thank you. Gentlemen, thank you so much for your very interesting arguments today. We will take this case under consideration, render a decision in due course. The court is in a brief recess until our next hearing. Thank you. Thank you.